UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> BLU HOMES, INC., <br><br> Defendant. | No.  2:21-cv-01543 KJM AC <br><br><br> FINDINGS AND RECOMMENDATIONS |

This matter is before the court on plaintiff's motion for default judgment.  ECF No. 10. The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19), and was set for hearing on the papers February 9, 2022.  ECF No. 11.  Defendant did not appear or file an opposition.  For the reasons set forth below, the undersigned recommends plaintiff's motion be GRANTED, and that judgment be entered in favor of plaintiff.

### I.     Relevant Background

Plaintiff Zurich American Insurance Company ("ZAIC") brought its complaint on August 27, 2021, alleging breach of contract and asserting that defendant owes $328,833.20 in unpaid policy premiums for a workers compensation policy renewal.  ECF No. 1 at 3-6.  Plaintiff alleges it is a New York corporation engaged in the insurance business with a statutory home office located at One Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York 10006, and its

1

principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196, and that defendant Blu Homes is a California corporation with its principal place of business located at 1015 Walnut Avenue, Vallejo, CA 94592.  Id. at 1-2.  Jurisdiction in this court is based on diversity pursuant to 28 U.S.C. § 1332.  Id. at 2.

A summons was issued to defendant on August 30, 2021.  ECF No. 4.  The summons was returned executed on September 13, 2021.  ECF No. 6.  Defendant did not appear, and plaintiff moved for entry of default on October 12, 2021.  ECF No. 7.  The Clerk entered default on October 13, 2021.  ECF No. 8.  Plaintiff moved for default judgment on January 8, 2022.  ECF No. 10.  Plaintiff filed an affidavit of service by mail of the motion upon defendant.  ECF No. 10-5.  Defendant did not respond to the motion for entry of default judgment and has not otherwise appeared in this case.

## II.     Motion

Plaintiff moves for default judgment in the total amount of $351,972.88 ($328,833.20 in principal damages for unpaid insurance premium and deductible, $22,702.68 in prejudgment interest, and $437.00 in statutory costs) in favor of ZAIC and against Blu Homes.  As noted above, Blu Homes has not appeared or filed any response.

The complaint alleges that at defendant's request, plaintiff issued Workers Compensation insurance policy no. WC- 5899178-01 (which was a renewal) to defendant for the policy period May 1, 2014 to May 1, 2015 (the "Agreement").  ECF No. 1 at 3.  Plaintiff provided workers compensation insurance coverage to defendant pursuant to the Agreement.  Id.  Pursuant to the terms of the Agreement, the initial premium charged for the policy was an estimate subject to adjustment based on a payroll and remuneration audit to be performed after the conclusion of the policy period.  Id.  A payroll audit was completed by Plaintiff of Defendants' payroll records after the conclusion of the policy term.  Id.  Plaintiff alleges that as a result of the payroll audit, and per the Agreement, an additional premium was due by defendant to plaintiff totaling $319,836.00.  Id. On or about October 8, 2015, plaintiff sent the payroll audit results to defendant along with demand for payment of an additional insurance premium totaling $319,836.00.  Id.  Pursuant to the Agreement, defendant also owed a deductible for handling workers compensation claims, and

or about July 20, 2018, an invoice was sent by Plaintiff to Defendants for a deductible owed of $24,997.20. Id.

On or about April 9, 2021, plaintiff determined that defendant was entitled to a credit against the amount of additional premium owed after payroll audit, reducing that amount from $319,836.00 to $303,836.00. Id. at 4. On or about April 9, 2021, plaintiff sent defendant a Statement of Account and demand for payment of $303,836.00 in additional premium, plus $24,997.20 for a deductible, for a total of $328,833.20 owed by defendant to plaintiff pursuant to the terms of the Agreement, but received no payment. Id. On or about May 13, 2021, plaintiff sent defendant a follow up demand for payment of the $328,833.20 owed pursuant to the terms of the Agreement but received no payment. Id.

With the motion for default judgment, plaintiff submitted copies of invoices, including a May 13, 2021 letter demanding payment of the balance due $328,833.20. ECF No. 10-2.

### III.   Analysis

A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1)   the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

////

////

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily disfavored.  Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's default conclusively establishes that party's liability, although it does not establish the amount of damages.  Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

B.  The Eitel Factors

1.  Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Here, plaintiff would suffer prejudice if the court did not enter a default judgment because it would be without recourse for recovery.  Accordingly, the first Eitel factor favors the entry of default judgment.

2.  Factors Two and Three: Merits of Claims and Sufficiency of Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries.  The court must consider

whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175. Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment.

Plaintiff brings a single cause of actinon for breach of contract. Plaintiff asserts that Illinois law should be applied to this matter because the contract/insurance policy at issue in this matter was issued by ZAIC from its principal place of business in Illinois, and because payments by defendants were to be made to ZAIC, the breach for non-payment occurred in Illinois, and ZAIC's damages for the breach occurred in Illinois. ECF No. 1 at 2. ZAIC argues its performance of its contractual duties occurred in Illinois, and thus Illinois contract law should apply in this matter. Id.

"In diversity jurisdiction cases, such as this one, we apply the forum state's choice-of-law rules." KST Data, Inc. v. DXC Tech. Co., 836 F. App'x 484, 486 (9th Cir. 2020). "The burden is on the party seeking to invoke foreign law; California applies its own rule of decision unless a party litigant properly invokes the law of a foreign state." McGhee v. Arabian Am. Oil Co., 871 F.2d 1412, 1422 (9th Cir. 1989), as amended on reh'g (Apr. 28, 1989). The applicable California statute provides: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. Here, plaintiff asserts in the complaint "payments by Defendants were to be made to ZAIC, the breach for non-payment occurred in Illinois, and ZAIC's damages for the breach occurred in Illinois. ZAIC's performance of its contractual duties occurred in Illinois. Illinois contract law should apply in this matter." ECF No. 1 at 2. The court finds that plaintiff has met its burden of demonstrating that Illinois law applies to the substantive breach of contract claim.

Under Illinois law, a plaintiff must plead "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." Gonzalzles v. American Express Credit Corp., 315 Ill. App. 3d 199, 206 (2000) (citing Gallagher Corp. v. Russ, 309 Ill. App. 3d 192, 199 (1999)). Here, plaintiff's complaint states that "At Defendants' request, Workers Compensation insurance policy

5

no. WC-5899178-01 (which was a renewal) was issued by Plaintiff to Defendants for the policy period May 1, 2014 to May 1, 2015 (the "Agreement")." ECF No. 1 at 3. Plaintiff provided the court a copy of the contract. ECF No. 13. Plaintiff performed the contract by providing workers compensation insurance. ECF No. 1 at 3. Plaintiff alleges that defendant breached the contract by failing to pay the $328,833.20 owed pursuant to the terms of the Agreement (premium and deductible costs), or any portion of that amount, despite being provided multiple invoices. ECF No. 10-2 at 3. Plaintiff has been economically injured due to the unpaid premium and deductible owed by defendant. Id. Plaintiff pled facts supporting all elements of a viable contract claim; the merits of the breach of contract claim therefore favor entry of default judgment.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. Plaintiff seeks damages totaling $351,972.88 ($328,833.20 for the unpaid premiums, prejudgment interest of $22,702.68, and recoverable costs of suit totaling $437.00). Wilmer Aff. (ECF No. 10-2) ¶¶ 5-14, Exhibit "A" and "B"; Horton Aff. (ECF No. 10-3) ¶¶ 11-16; Exhibit "E." "Absent an express agreement of the parties, prejudgment interest is allowed by statute if the amount due is fixed or easily computed." Crystal Lake Ltd. P'ship v. Baird & Warner Residential Sales, Inc., 2018 IL App (2d) 170714, ¶ 77 (2018). Per 815 Illinois Comp. Stat. 205/2, when there is no interest rate cited in an agreement, five (5) percent per annum can be charged on thirty days' notice. The amount at issue is proportionate to the seriousness of defendant's conduct and this factor favors entry of default judgment.

### 4. Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after

the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.

### 5. Factor Six: Whether Default Was Due to Excusable Neglect

Having reviewed the record before the court, the undersigned finds no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff served the defendant with the summons and complaint. ECF No. 6. Moreover, plaintiff served defendant by mail with notice of its application for default judgment. ECF No. 10-5. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant failed to defend itself in this action. Thus, the record supports a conclusion that the defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

### 6. Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

### 7. Conclusion: Propriety of Default Judgment

Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendant. What remains is the determination of the amount of damages to which plaintiff is entitled.

### C. Terms of Judgment

Plaintiff's motion for default judgment includes a proposed order seeking damages in the amount of $351,972.88 (consisting of $328,833.20 in principal damages, $22,702.68 in

prejudgment interest, and $437.00 in costs).  ECF No. 10-4.  Plaintiff established the amount of damages owed by Blu Homes for the unpaid insurance premium and deductible, in the amount of $328,833.20, through provision of the Wilmer Aff. ¶¶ 5-12; Exhibits "A" and "B."  Plaintiff sets forth the methodology of its calculation of prejudgment interest totaling $22,702.68[1] and provides evidence of its statutory costs of $437.00 through the Horton Aff. ¶¶ 12-16; Exhibit "E."  The court finds the requested damages are supported.

### IV.     Conclusion

For the reasons explained above, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 10) be GRANTED;

2. The court enter judgment in the amount of $351,972.88 in favor of plaintiff and against defendant, and

3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: March 22, 2022

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

[1] The prejudgment interest number is calculated through February 9, 2022, the initial hearing date set for this motion.  The court declines to add interest through the date of these findings and recommendations because the slight delay in issuance was due to the need for supplemental briefing, which was filed March 18, 2022 (ECF No. 13).